COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| **BRISTOL, ss.** | **SUPERIOR COURT** |
| | **CRIMINAL ACTION** |
| | **NO. 2010-1082** |

BRISTOL, SS SUPERIOR COURT
FILED

FEB 6 2017

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

COMMONWEALTH

vs.

BRUCE COOPER

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL AND MOTION FOR POST-CONVICTION DISCOVERY

On July 16, 2012, a Bristol County jury convicted the defendant, Bruce Cooper ("Cooper" or "defendant"), on two counts of aggravated statutory rape, one count of statutory rape, and one count of indecent assault and battery on a child under the age of fourteen. Cooper now moves for a new trial pursuant to Mass. R. Crim. P. 30(b) claiming ineffective assistance of counsel, and also moves for post-conviction discovery pursuant to Mass. R. Crim. P. 17 and Mass. R. Crim. P. 30(c). For the reasons that follow, Cooper's motions are **DENIED**.

### BACKGROUND[1]

On July 31, 2009, the victim, "RC," told her mother, "Alison," that her stepfather, Cooper, had been sexually assaulting her on a regular basis for several years. Cooper was arrested and charged with sexually abusing RC on August 6, 2009. Immediately following his arrest, Cooper participated in a recorded interview with North Attleboro Police Detective Dan Arrighi ("Det. Arrighi"). During the interview, Cooper repeatedly denied RC's allegations. Cooper also told Det. Arrighi about a number of incidents during which he rejected RC's alleged attempts to engage in sexual behavior with him. At one point, Det. Arrighi told Cooper that Alison reported to police that he had told her he had worn a condom when he had intercourse

---
[1] Some facts are reserved for discussion below.

1

with RC. Cooper responded that he had not worn a condom his "whole entire life" and explained that due to high blood pressure he "cannot even achieve an erection most times."

Between July 31, 2009 and December 2009, RC recanted and modified her allegations against Cooper several times. Reports from the Department of Children and Families ("DCF"), which were later turned over to Cooper's trial counsel, Attorney John Connors ("Attorney Connors"), reflected these changes to RC's allegations. The reports also indicated that RC had been seeing two therapists, one of whom was Mary Ann Silvestri ("Silvestri"), while the charges against Cooper were pending. One of the DCF reports noted that RC told Silvestri she and Cooper never had sexual intercourse.

Cooper's trial began on July 10, 2012. At trial, RC testified that Cooper began sexually abusing her in 2004, by laying on top of her clothed and humping her. RC stated that the abuse did not progress to the point of penile penetration until 2007, and that in addition to penile penetration, Cooper digitally penetrated and performed cunnilingus on her. RC testified that Cooper never wore a condom during intercourse and also that she never observed him struggle to achieve an erection.

On the third day of trial, the prosecutor provided the judge and Attorney Connors a redacted version of Cooper's August 2009 interview with Det. Arrighi ("Interview Video"), which Attorney Connors' moved to exclude. The judge allowed the redacted Interview Video to come into evidence, but declared that Attorney Connors could play any part of the Interview Video he wished in order to establish context. Ultimately, Attorney Connors did not play any of the redacted portions of the Interview Video for the jury.

2

# RULINGS OF LAW

## I. Motion for a New Trial

"The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30(b). While the granting of a new trial is within the discretion of the judge, "that discretion is not boundless and absolute." *Commonwealth* v. *Genius*, 402 Mass. 711, 714 (1988), citing *Commonwealth* v. *Preston*, 393 Mass. 318, 324-325 (1984). "Judges are to apply the standard set forth in rule 30(b) rigorously and should only grant such a motion if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth." *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 635-636 (2001).

In the present case, Cooper argues that justice was not done in his trial because Attorney Connors did not provide him effective assistance. "A defendant is denied his constitutional right to effective assistance of counsel where the conduct of his attorney falls 'measurably below that which might be expected of an ordinary fallible lawyer,' and thereby "likely deprived the defendant of an otherwise available, substantial ground of defen[s]e." *Commonwealth* v. *Glover*, 459 Mass. 836, 842 (2011), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) and cases cited. "The burden lies with the defendant, . . . [who] must show that 'better work might have accomplished something material for the defense.'" *Commonwealth* v. *Phinney*, 446 Mass. 155, 162 (2006) (citation omitted), quoting *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

"Where defense counsel made a strategic or tactical decision that the defendant now challenges," the court must determine "whether the decision was 'manifestly unreasonable' when made, recognizing that '[m]any decisions of defense counsel that are characterized in hindsight

3

as errors may have been reasonable tactical or strategic decisions when made.'" *Commonwealth v. Walker*, 460 Mass. 590, 598-599 (2011) (alteration in original), quoting *Commonwealth v. Mosher*, 455 Mass. 811, 827 (2010). "Only 'strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent' are manifestly unreasonable." *Commonwealth v. Pillai*, 445 Mass. 175, 186-187 (2005), quoting *Commonwealth v. Levia*, 385 Mass. 345, 353 (1982).

Cooper argues that he is entitled to a new trial because Attorney Connors deprived him of effective assistance. In particular, the defendant cites: (1) Attorney Connors' decision not to present redacted portions of the Interview Video; (2) Attorney Connors' failure to present a medical document proving Cooper suffered from erectile dysfunction; and (3) Attorney Connors' failure to obtain RC's therapy records, which may have revealed RC told her therapist that Cooper did not sexually abuse her. The court will address each of Cooper's arguments in turn, below.

### *Interview Video*

Cooper contends that the redacted Interview Video played for the jury omitted footage of him denying sexually abusing RC thirty-one times and denying admitting that he abused RC to Alison fourteen times. Citing *Commonwealth v. Barbosa*, 457 Mass. 773, 799 (2010), Cooper argues that allowing the jury to hear his "prompt, clear, and empathetic" denials would have been of "great value" to his defense. Therefore, according to Cooper, Attorney Connors' failure to present the redacted denials amounted to a performance that fell "measurably below that which might be expected from an ordinary fallible lawyer." See *Glover*, 459 Mass. at 842. The court does not agree.

4

The redacted denials were not dispositive of the allegations against Cooper and merely cumulative of other denials that *were* presented to the jury. The version of the Interview Video presented to the jury included footage of Cooper denying RC's accusations at least ten times and Cooper's accounts of numerous occasions on which he purportedly rejected RC's attempts to engage in sexually inappropriate behavior with him. "The failure to offer cumulative evidence is not ineffective assistance of counsel." *Commonwealth* v. *Drew*, 447 Mass. 635, 650 (2006). Accordingly, Cooper is not entitled to a new trial based on Attorney Connors' failure to present the redacted denials to the jury.

Cooper also argues that Attorney Connors' decision not to show the redacted denials misled the jury into believing the Interview Video was a confession. This argument is unpersuasive in light of Cooper's repeated denials and exculpatory explanations that *were* presented to the jury, discussed *supra*. Had Attorney Connors presented the Interview Video without the Commonwealth's redactions, it would not have conveyed a significantly different message than was conveyed by the redacted version of the Interview Video. Cf. *Commonwealth* v. *Corriveau*, 396 Mass. 319, 334-335 (1985) (inclusion of facts omitted from warrant affidavit would not have conveyed a significantly different message than warrant affidavit that was actually submitted). Moreover, any ambiguities in the redacted Interview Video could have been resolved by the jury "in a manner consistent with their usual function of deciding the weight to be given to the evidence." *Commonwealth* v. *Allen*, 22 Mass. App. Ct. 413, 23 (1986). Based on the foregoing, Attorney Connors' decision not to present any of the redacted portions of the Interview Video did not deprive Cooper of a substantial ground of defense and thus, did not deprive Cooper of effective assistance of counsel.

5

*2004 Medical Record*

Cooper next argues that Attorney Connors' failure to present a June 8, 2004 medical record stating that he suffered from erectile dysfunction deprived him of a legitimate defense to the rape charges, particularly in light of the Commonwealth's closing argument, which suggested that he and Alison had fabricated the erectile dysfunction issue. This argument is unavailing.

"To prove the crime of rape of a child . . . the Commonwealth must prove beyond a reasonable doubt that the defendant engaged in (1) sexual intercourse or unnatural sexual intercourse with (2) a child under sixteen years of age." *Commonwealth* v. *Lawton*, 82 Mass. App. Ct. 528, 533 (2012); see *Commonwealth* v. *Sherman*, 451 Mass. 332, 336 (2008), citing G. L. c. 265, § 22(b) ("The legal meaning of rape implies sexual or unnatural sexual intercourse."). "[T]he definition of 'unnatural sexual intercourse' must be taken to include oral and anal intercourse, including fellatio, cunninlingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977). Therefore, even if Attorney Connors had introduced the medical report into evidence, it would not have been dispositive of the defendant's rape charges because RC testified that Cooper had digitally penetrated and performed cunnilingus on her.

Moreover, the 2004 medical record predates the period of time when RC testified Cooper began to penetrate her with his penis by approximately three years, and there is no evidence the defendant had not fully recovered from his erectile dysfunction during that time.[2] Consequently, the 2004 medical record was temporally remote and lacked probative value because it shed no light on Cooper's ability to achieve an erection during the period of time in question. See *Commonwealth* v. *Copeland*, 357 Mass. 438, 443 (1978). Accordingly, Attorney Connors'

---

[2] To the contrary, Alison's testimony regarding her sexual relationship with Cooper through July 2008 tended to show the defendant *was* sexually functional during the period of the alleged penile penetration of RC.

failure to introduce the 2004 medical record did not deprive Cooper of a substantial ground of defense or the effective assistance of counsel.

### *RC's Therapy Records*

Cooper last argues that Attorney Connors' failure to obtain RC's therapy records deprived him of a substantial ground of defense and the effective assistance of counsel. In particular, Cooper contends that based on the DCF reports, indicating RC had recanted and modified her allegations and told Silvestri that she never had sex with the defendant, "a very strong likelihood existed that RC denied the alleged abuse to her therapists." The defendant avers that such evidence "would have been extremely helpful to the defense."

At the defendant's trial, Attorney Connors presented RC's SAIN interview to the jury in its entirety. During that interview, RC not only states that she did not tell Silvestri about anything that happened with Cooper, but recanted her previous allegation that she and the defendant had sexual intercourse. Accordingly, the jury returned a verdict at Cooper's trial with full knowledge of RC's various recantations and amendments to her allegations. Additional evidence of RC's recantations and amendments, assuming such evidence exists, would have merely been cumulative. Since the failure to introduce cumulative evidence is not ineffective assistance of counsel, Cooper is not entitled to a new trial based on Attorney Connors' failure to obtain and introduce RC's therapy records. See *Drew*, 447 Mass. at 650.

### II. <u>Motion for Post-Conviction Discovery</u>

Cooper has also filed a motion seeking post-conviction discovery of RC's therapy records on the grounds that the records may contain exculpatory information that RC denied Cooper's abuse to her therapists. Discovery in the context of a new trial motion is only available to defendants who have established a prima facie case for relief. See Mass. R. Crim. P. 30(c)(4).

Therefore, since the defendant has failed to establish a prima facie case of ineffective assistance, for the reasons articulated *supra*, the defendant is not entitled to post-conviction discovery.

## **ORDER**

For the foregoing reasons, the defendant's Motion for a New Trial and Motion for Post-Conviction Discovery are **DENIED**.

January 27, 2017

_____
Merita A. Hopkins
Justice of the Superior Court