UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

BRUCE COOPER,                              )
      Petitioner,                          )
                                     )

v.                                         )         Civil Action No. 20-CV-4484-TSH
                                      )
MATTHEW DIVRIS,                            )
      Respondent.                          )
_____ )

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
TO PETITION FOR A WRIT OF HABEAS CORPUS**

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

Jennifer K. Zalnasky (BBO # 650762)
Assistant Attorney General
Appeals Division
Criminal Bureau
1441 Main Street, Suite 1200
Springfield, Massachusetts 01103
413-523-7746 (direct)
413-784-1244 (fax)
jennifer.zalnasky@state.ma.us

Dated:  November 13, 2020

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 3

ARGUMENT ...................................................................................................................... 8

I.    The Legal Standard Governing Review of Habeas Corpus Petitions Sets a High Bar for
      Relief ......................................................................................................................... 8

      A.    Federal Habeas Review of State Convictions Is Highly Deferential ..................... 8

      B.    A Federal Habeas Petitioner Is Not Entitled to Relief Unless He Demonstrates
            that Any Trial Error Had a Substantial and Injurious Effect on the Jury's Verdict
            ................................................................................................................................ 11

II.   The MAC Reasonably and Correctly Rejected the Petitioner's Claim that Trial Counsel
      Was Ineffective ....................................................................................................... 12

      A.    The Standard of Review for Ineffective Assistance of Counsel Claims on Habeas
            Review Is Doubly Deferential .............................................................................. 12

      B.    The Petitioner Is Not Entitled to Habeas Relief on His Claim that Trial Counsel
            Was Ineffective for Failing to Present Exculpatory Evidence .............................. 14

CONCLUSION ................................................................................................................. 22

CERTIFICATE OF SERVICE ....................................................................................... 23

## INTRODUCTION

In July 2012, a jury of the Bristol County Superior Court found the petitioner guilty of two counts statutory rape aggravated by age difference; and one count each of statutory rape, and indecent assault and battery on a child under the age of fourteen. These convictions were the result of the petitioner's sexually assaulting his stepdaughter, RC.[1]   Following his appeal at the Massachusetts Appeals Court (MAC), the petitioner's aggravated rape charges were affirmed, and the remaining two charges were vacated. His petition for rehearing in the MAC and his subsequent application for leave to obtain further appellate review (ALOFAR) in the Supreme Judicial Court (SJC) were both denied.

In this petition for writ of habeas corpus, the petitioner alleges that trial counsel was constitutionally ineffective for failing to present some exculpatory evidence through his video interview with police, specifically some denials that were made by the petitioner. This Court should deny the petition for writ of habeas corpus because the MAC's rejection of the petitioner's claims was not contrary to or an unreasonable application of any clearly established Supreme Court precedent.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Factual Determinations Related to the Sexual Assault of RC

In federal habeas corpus proceedings, "a determination of a factual issue made by a state court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Evans v. Thompson*, 518 F.3d 1, 3 (1st Cir. 2008). The statutory presumption extends to "findings [that] are made by a state appellate court as well as [those that] are made by a state trial court." *RaShad v. Walsh*, 300 F.3d

---

[1] In the state court, the Commonwealth used the pseudonym, Rachel; the respondent will use "RC" to be consistent with the petitioner here.

27, 35 (1st Cir. 2002). The presumption further extends to implicit findings. *See*, *e.g.*, *Teti v. Bender*, 507 F.3d 50, 59 (1st Cir. 2007) ("[I]mplicit credibility determinations . . . are exactly the type of factual determinations to which we defer, at least short of any indication of serious error."); *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (presumption applies to "'unarticulated findings which are necessary to . . . conclusions of mixed law and fact'"); *Cooper v. Brown*, 510 F.3d 870, 919-20 (9th Cir. 2007) (same; adding, "[t]he express and implied factual determinations by the state trial [and supreme] court[s] . . . are entitled to deference"). "The petitioner bears the burden of overcoming that presumption by providing 'clear and convincing evidence.'" *Teti*, 507 F.3d at 57, *quoting* 28 U.S.C. § 2254(e)(1).

Here, the MAC did not make extensive factual findings. However, the Superior Court judge, who denied the motion for new trial, but was not the trial judge, made the following findings:[2]

A. The Allegations and Subsequent Investigation

On July 31, 2009, the victim, "RC," told her mother, "Alison" [a pseudonym] that her stepfather, Cooper, had been sexually assaulting her on a regular basis for several years. Cooper was arrested and charged with sexually abusing RC on August 6, 2009. Immediately following his arrest, Cooper participated in a recorded interview with North Attleboro Police Detective Dan Arrighi ("Det. Arrighi"). During the interview, Cooper repeatedly denied RC's allegation. Cooper also told Det. Arrighi about a number of incidents during which he rejected RC's alleged attempts to engage in sexual behavior with him. At one point, Dr. Arrighi told Cooper that Alison reported to police that he had told her he had worn a condom when he had intercourse with RC. Cooper responded that he had not worn a condom his "whole entire life" and explained that due to high blood pressure he "cannot even achieve an erection most times."

Between July 31, 2009 and December 2009, RC recanted and modified her allegations against Cooper several times. Reports from the Department of Children and Families ("DCF") which were later turned over to Cooper's trial counsel,

---

[2] To the extent it is relevant, additional factual findings made by either the MAC or the trial court will be discussed below, as part of the argument section.

Attorney John Connors ("Attorney Connors"), reflected these changes to RC's allegations. The reports also indicated that RC had been seeing two therapists, one of whom was Mary Ann Silvestri ("Silvestri"), while the charges against Cooper were pending. One of the DCF reports noted that RC told Silvestri she and Cooper never had sexual intercourse.

S.A.73-74.

B.  The Relevant Facts from the Trial

Cooper's trial began on July 10, 2012. At trial, RC testified that Cooper began sexually abusing her in 2004, by laying on top of her clothed and humping [sic] her. RC stated that the abuse did not progress to the point of penile penetration until 2007, and that in addition to penile penetration, Cooper digitally penetrated and performed cunnilingus on her. RC testified that Cooper never wore a condom during intercourse and also that she never observed him struggle to achieve an erection.

On the third day of trial, the prosecutor provided the judge and Attorney Connors a redacted version of Cooper's August 2009 interview with Det. Arrighi ("Interview Video"), which Attorney Connors moved to exclude.[3] The judge allowed the redacted Interview Video to come into evidence, but declared that Attorney Connors could play any part of the Interview Video he wished in order to establish context. Ultimately, Attorney Connors did not play any of the redacted portions of the Interview Video for the jury.

S.A.74.

2.  **Procedural History of the Petitioner's Convictions and Challenges**

On July 16, 2012, after a five-day trial, a jury in the Bristol Superior Court found the petitioner guilty of four charges: 1) two counts of aggravated statutory rape; 2) one count of statutory rape; and 3) one count of indecent assault and battery on a child under the age of fourteen. S.A.7-8. The petitioner was sentenced to concurrent ten-to-fifteen-year prison terms on the aggravated rape charges; and concurrent terms of ten years of probation, to run from and after his prison sentence, on the other two charges. S.A.8.

---

[3] At trial, the redacted video was played. S.A.1150. After trial, the video was transcribed and a copy appears at S.A.180-228

Before trial, defense counsel filed a motion in limine to exclude the recorded police interview. *Commonwealth v. Cooper*, 94 Mass. App. Ct. 1114, 119 N.E.3d 356, 2018 WL 6626305, *1 (2018).[4] The motion was denied, and the judge ruled that the Commonwealth could present a redacted version of the video. *Id*. The portion to be redacted referenced the detective arguing with the petitioner over whether the petitioner's wife still wanted him in the house. S.A.1034-1039. The judge also told defense counsel that, "if he wish[ed] more of the interview in, then [he was] free to designate that." S.A.1038; *Cooper*, 2018 WL 6626305, *1. Counsel did not designate any additional portions, and the redacted video was played for the jury. *Id*.

After his trial, the petitioner filed a timely notice of appeal, which was docketed in the MAC in August 2014. S.A.8-9. That appeal was stayed to allow the petitioner to file a motion for new trial. S.A.9. His motion for new trial was denied in January 2017. S.A.73-80. In his motion, among other issues not relevant here, he asserted that trial counsel was ineffective for failing to present exculpatory evidence from the video interview. S.A.115-167.[5] In her rulings of law, the motion judge explained that the petitioner argued that "the redacted interview video played for the jury omitted footage of him denying sexually abusing RC thirty-one times and denying admitting that he abused RC to Alison fourteen times." S.A.76. The judge found that "the redacted denials were not dispositive of the allegations against Cooper and [were] merely cumulative of other denials that *were* presented to the jury. The version of the Interview Video presented to the jury included footage of Cooper denying RC's accusations at least ten times and Cooper's accounts of numerous occasions on which he purportedly rejected RC's attempts to engage in sexually

---

[4] Because the petitioner's case was decided by a panel of judges in the MAC in an unpublished decision, the citation here will be to *Cooper*, 2018 WL 6626305. A copy of the decision appears at S.A.15-18.

[5] Although not discussed in detail by the motion judge, the petitioner included the unsigned affidavit of trial counsel with his motion for new trial. A copy of this affidavit appears at S.A.178-179.

inappropriate behavior with him." R.A.77 (emphasis in original). The petitioner also argued that trial counsel's decision "not to show the redacted denials misled the jury into believing the Interview Video was a confession." S.A.77. The judge found this argument "unpersuasive in light of Cooper's repeated denials and exculpatory explanations that *were* presented to the jury." *Id.* (emphasis in original). The judge also found that, had trial counsel "presented the Interview Video without the Commonwealth's redactions, it would not have conveyed a significantly different message than was conveyed by the redacted version of the Interview Video." *Id.* After the denial of his motion, the petitioner filed a timely notice of appeal, which was docketed in March 2017. S.A.13. His two appeals were consolidated on March 27, 2017. S.A.13.

On December 19, 2018, a panel of three justices in the MAC, in an unpublished decision, affirmed the denial of the motion for new trial. *Cooper*, 2018 WL 6626305, *3. The MAC also ordered the indictments charging statutory rape and indecent assault and battery to be vacated as duplicative. *Id.* The remaining convictions for aggravated statutory rape were affirmed. *Id.* As is relevant here, in both the motion for new trial and the appeal, the petitioner alleged trial counsel was ineffective for failing to admit redacted portions of the video interview with the police, which included denials made by the petitioner. *Id.* at *1. The MAC concluded that "it was not manifestly unreasonable for counsel to have decided that many of the redacted denials would do more harm than good to the defense." *Id.* In addition, the MAC found that, based on the record before it, which did not include the unredacted video, the petitioner failed to demonstrate any prejudice. *Id.* at *2.

Following the MAC's decision, on December 31, 2018, the petitioner filed a petition for rehearing, pursuant to Mass. R. App. P. 27.[6] S.A.362. The petition requested that the panel

---

[6] "The grant or denial of a petition for rehearing is a matter of discretion of the panel who decided the appeal." *Acme Plastering Co. v. Boston Hous. Auth.*, 25 Mass. App. Ct. 985, 985, 521 N.E.2d 418, 420 (1988), *citing* Mass. R. App.

reconsider its decision based on a review of the full, unredacted video interview, which had inadvertently not been provided to the MAC by the trial court as part of the record. S.A.362-365. On January 4, 2019, the petitioner filed his ALOFAR. S.A.14. On February 27, 2019, the MAC entered the following order: "After receipt of the full, unredacted video and after further review, the petition for rehearing is denied by a majority of the panel (Sacks & Shin, JJ.). Justice Rubin would allow the petition." S.A.14. The ALFOAR was then summarily denied on April 5, 2019. *Id.*

The petitioner filed this petition for writ of habeas corpus on July 2, 2020, raising one ground for relief: that the petitioner was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to present exculpatory evidence to the jury. Doc. No. 1. On the day the petitioner filed his petition, he also filed a memorandum in support of it. Doc. No. 2. The respondent submits this memorandum in opposition to the petition.

## ARGUMENT

I.   **The Legal Standard Governing Review of Habeas Corpus Petitions Sets a High Bar for Relief**

   A.   **Federal Habeas Review of State Convictions Is Highly Deferential**

Under 28 U.S.C. § 2254, this Court's review of the state court's decision is highly deferential. *See King v. MacEachern*, 665 F.3d 247, 251 (1st Cir. 2011). "Under the 'peculiarly deferential standards' of [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)], 'error by state court, without more, is not enough to warrant federal habeas relief.'" *Bebo v. Medeiros*, 906 F.3d 129, 134 (1st Cir. 2018), *quoting Cronin v. Commissioner of Probation*, 783 F.3d 47, 50 (1st Cir. 2015). Pursuant to AEDPA, a federal court cannot grant habeas relief on a

P. 27(a); *see also* Mass. R. App. 27(e). In 2019, the title of Mass. R. App. P. 27 was changed to "motion for reconsideration or modification of decision" and some portions of Rule 27(a) were moved to subsection (e). None of these changes affects this case.

legal claim that was "adjudicated on the merits" in state court unless the state-court decision at issue is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" (28 U.S.C. § 2254(d)(1)) or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" (28 U.S.C. § 2254(d)(2)).

Taking a closer look at each scenario, under § 2254(d)(1), a state court's decision is "contrary to" clearly established Supreme Court precedent when it arrives at a conclusion of law opposite to that reached by the Supreme Court or when it resolves a case differently than the Supreme Court on materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). "In this context, clearly established law signifies the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." *Howes v Fields*, 565 U.S. 499, 505 (2012) (quotations omitted). Even if a petitioner shows that the state court applied a standard that was contrary to clearly established federal law, he is not automatically entitled to habeas relief. *Aspen v. Bissonnette,* 480 F.3d 571, 576 (1st Cir. 2007). Instead, the petitioner is still required to demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States," which means that he "must show that his underlying detention is unlawful and not just that the state court employed faulty reasoning in his case." *Id.* The petitioner must demonstrate "'that Supreme Court precedent requires an *outcome* contrary to that reached by the relevant state court.'" *Id.* (emphasis in original), *quoting O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998), *abrogated on other grounds by McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002) (en banc). A petitioner cannot obtain habeas relief if, applying the correct constitutional standard, he would not prevail on his claim. *Id.*

A state court unreasonably applies clearly established Supreme Court precedent "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "For purposes of §

2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 102 (2011), *quoting Williams v. Taylor*, 529 U.S. 362, 410 (2000). Under § 2254(d)(1), a habeas court must not grant relief unless the petitioner has "show[n] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. And, "'evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id.* at 101, *quoting, with alteration*, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Federal habeas relief only 'provides a remedy for instances in which a state court unreasonably *applies* [the Supreme] Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.'" *Bebo*, 906 F.3d at 134, *quoting Woodall*, 572 U.S. at 426 (emphasis in original); *see also Woodall*, 572 U.S. at 424-426 (rejecting notion that relief can be granted on the ground that "'the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled'"); *Moore v. Dickhaut*, 842 F.3d 97, 100 (1st Cir. 2016) (citing *Woodall* for proposition that "state courts do not act unreasonably by declining to extend Supreme Court precedent"); *Powell v. Tompkins*, 783 F.3d 332, 336-337 (1st Cir. 2015) (summarizing *Woodall* as "rejecting an 'unreasonable-refusal-to-extend rule' that was discussed in earlier AEDPA cases").[7]

Under the second scenario, a habeas petitioner cannot be granted relief unless he can demonstrate that the state-court decision was "based on an unreasonable determination of the facts

---

[7] Some courts continue to erroneously state, with some regularity, that habeas relief can be predicated on the invalid "'unreasonable-refusal-to-extend rule.'" This Court should avoid relying on those parts of judicial decisions that recite, or appear to apply, that invalid rule.

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also*

*Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001). To satisfy § 2254(d)(2), a petitioner must

show that the state court's decision was based on factual determinations that were objectively

unreasonable—that is, more than merely incorrect or erroneous. *See Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003), *citing Williams*, 529 U.S. at 399. "A federal habeas court may not grant

habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual

determination." *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003). A petitioner, thus, "must

clear a high hurdle before a federal court will set aside any of the state's factual findings."

*Mastracchio*, 274 F.3d at 598.

> **B.**  **A Federal Habeas Petitioner Is Not Entitled to Relief Unless He Demonstrates that Any Trial Error Had a Substantial and Injurious Effect on the Jury's Verdict**

A federal habeas petitioner is not entitled to a writ of habeas corpus based on a non-

structural constitutional error, unless the error "had substantial and injurious effect or influence in

determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (quotation

omitted); *see Fry v. Pliler*, 551 U.S. 112, 121 (2007) (constitutional errors in state court

proceedings are reviewed for harmlessness under the *Brecht* standard). The burden of

demonstrating that an error had a substantial and injurious effect should rest with the petitioner.

*Davis v. Ayala*, 576 U.S. 257, 270 (noting that "a prisoner who seeks federal habeas corpus relief

must satisfy *Brecht*" and "must show that he was actually prejudiced"), *reh'g denied*, 576 U.S.

1087 (2015); *Brecht*, 507 U.S. at 637 ("habeas petitioners may obtain plenary review of their

constitutional claims, but they are not entitled to habeas relief based on trial error unless *they can*

*establish* that it resulted in actual prejudice" (emphasis added; quotation omitted)).[8] Applying these stringent standards, this Court should deny relief and dismiss the petition.

## II.     The MAC Reasonably and Correctly Rejected the Petitioner's Claim that Trial Counsel Was Ineffective

The petitioner asserts that trial counsel provided ineffective assistance in violation of his Sixth Amendment right by failing to present exculpatory evidence that had been redacted from the video of his interview with police. P. Memo 37. The petitioner's claim fails on habeas review because he cannot establish that the MAC's decision was an unreasonable application of clearly established federal law.

### A.     The Standard of Review for Ineffective Assistance of Counsel Claims on Habeas Review Is Doubly Deferential

Claims of ineffective assistance of counsel are mixed questions of law and fact and are generally reviewed under the unreasonable application clause of 28 U.S.C. § 2254(d)(1). *Teti*, 507 F.3d at 57; *Shuman v. Spencer*, 636 F.3d 24, 31 (1st Cir. 2001). The clearly established federal law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466

---

[8] *See Dorisca v. Marchilli*, 941 F.3d 12, 22 (1st Cir. 2019) (Thompson, J.) ("*Dorisca* still would not prevail because *he cannot show error* under the actual-prejudice standard" of *Brecht* (emphasis added)); *Lucien v. Spencer*, 871 F.3d 117, 122 (1st Cir. 2017) (Kayatta, J.) ("The petitioner must also show that the state court's error had a 'substantial and injurious effect' on the jury's verdict."); *Connolly v. Roden*, 752 F.3d 505, 506, 509 n.6 (1st Cir. 2014) (Lynch, C.J.) (describing *Brecht* standard as "even more deferential than the ordinary standard of review under the [AEDPA]"; and indicating that, "[a]lthough it does not say so explicitly, *Fry*'s language strongly implies that the burden is on the petitioner"); *Santiago v. O'Brien*, 628 F.3d 30, 36 (1st Cir. 2010) (Boudin, J.) ("Whether *Santiago could establish* such harmful effect [under *Brecht*] is at best doubtful; but we need not decide the question as we find no error." (Emphasis added.)); *see also Johnson v. Lamas*, 850 F.3d 119, 133 n.19 (3d Cir. 2017) ("in recognition of the concerns of finality, comity, and federalism, *Brecht* shifts the burden on collateral review to the petitioner to demonstrate that the error had a substantial and injurious effect on the verdict" (quotation and ellipsis omitted)), *cert. denied*, 138 S. Ct. 975 (2018); *Rodriguez v. Secretary, Fla. Dep't of Corr.*, 756 F.3d 1277, 1306 (11th Cir. 2014) (referring to a habeas petitioner's "*Brecht* burden"), *cert. denied sub nom. Rodriguez v . Jones*, 575 U.S. 939 (2015); *Rodriguez v. Chandler,* 382 F.3d 670, 674 (7th Cir. 2004) (Easterbrook, J.) ("The norm in cases on collateral review is that the petitioner must show that the error had a substantial and injurious effect on the outcome."); *Wilson-El v. Finnan*, 311 F. App'x 908, 911 (7th Cir. 2008) (unpublished) (same). *But see Foxworth v. St. Amand*, 570 F.3d 414, 436 (1st Cir. 2009) (indicating that the respondent has the burden under *Brecht*). *Foxworth* is difficult to reconcile with certain language in *Brecht* itself, more recent Supreme Court precedent, the First Circuit's more recent pronouncements on harmlessness in habeas cases, and the opinions of other courts of appeals.

U.S. 668 (1984). *See Williams*, 529 U.S. at 390-391. On direct review, a criminal defendant must establish two elements to prevail. First, he must show that counsel's performance was constitutionally deficient, which requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. *Id*.

To show deficient performance, the petitioner would have to demonstrate that counsel's performance fell below a standard of objective reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-688. To establish resulting prejudice, the petitioner must show that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 694; *see Ouber v. Guarino*, 293 F.3d 19, 33 (1st Cir. 2002) (*Strickland*'s prejudice prong requires a habeas court to "consider, on whole-record review, whether the trial might have ended differently absent the lawyer's blunder"). An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* at 692; *Sleeper v. Spencer*, 501 F.3d 32, 38-39 (1st Cir. 2007). Both deficient performance and prejudice must be shown; otherwise, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

On habeas review, the AEDPA standard is layered over the already-deferential *Strickland* standard, resulting in a standard of review that is "doubly deferential." *See Yeboah-Sefah v. Ficco*, 556 F.3d 53, 65 (1st Cir. 2009). This doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt. This is an extremely difficult standard to meet." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016), *quoting Pena v. Dickhaut*, 736 F.3d 600, 606 (1st Cir. 2013) (citations and internal quotation marks omitted). The Supreme Court has repeatedly "reinforced the 'doubly' deferential standard that applies to a state prisoner's claims in

a federal habeas petition that a state court has unreasonably applied the *Strickland* principles." *Jewett v. Brady*, 634 F.3d 67, 75 (1st Cir. 2011), *citing Richter*, 562 U.S. 86. Under AEDPA, "[t]he 'pivotal question' in a federal collateral attack under *Strickland* is not 'whether defense counsel's performance fell below *Strickland*'s standard,' but 'whether the state court's application of the *Strickland* standard was unreasonable.'" *Id.*, *quoting Richter*, 562 U.S. at 101-102. Additionally, the Court reiterated that the "*Strickland* standard is a very general one, so that state courts have considerable leeway in applying it to individual cases." *Id.*

There is no dispute that the MAC adjudicated the petitioner's claim on the merits; therefore, AEPDA deference applies.[9] Under this doubly-deferential standard, the petitioner fails to demonstrate that fair-minded jurists would conclude that the MAC unreasonably applied *Strickland* in finding that trial counsel's assistance was not ineffective.

**B.     The Petitioner Is Not Entitled to Habeas Relief on His Claim that Trial Counsel Was Ineffective for Failing to Present Exculpatory Evidence**

The petitioner's contention is that his trial counsel's performance was constitutionally deficient because he failed to present denials from the interview video that had been redacted when the Commonwealth presented the video. P. Memo 39-44. This is a classic case of second-guessing counsel's actions and tactics with the benefit of hindsight, an approach that courts have repeatedly rejected as a basis for a finding of constitutionally ineffective assistance of counsel. As will be shown, there is no reason for this Court to deviate from well-settled case law that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed." *See Premo v. Moore*, 562 U.S. 115, 132 (2011); *see also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). "Under the first prong of *Strickland*, there is a 'strong presumption'

---

[9] The MAC decided this case by applying *Commonwealth v. Saferian*, 366 Mass. 89, 96, 615 N.E.2d 878 (1974), which the First Circuit has stated is at least as protective as the federal *Strickland* standard. *See Jewett*, 634 F.3d at 75.

that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006), *quoting Strickland*, 466 U.S. at 689. Moreover, even if the petitioner presents a viable alternate trial strategy that could have been employed, this does not automatically mean that trial counsel's decision was constitutionally ineffective. *See Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.").

The MAC began its analysis by properly acknowledging that, when an ineffective assistance "'claim is based on a tactical or strategic decision, the test is whether the decision was 'manifestly unreasonable' when made.'" *Cooper*, 2018 WL 6626305, *1, *quoting Commonwealth v. Kolenovic*, 471 Mass. 664, 674 (2015). The First Circuit has concluded that this "manifestly unreasonable" standard is not contrary to the *Strickland* standard. *See Castillo v. Matesanz*, 348 F.3d 1, 13 (1st Cir. 2003). Therefore, the MAC's decision to apply this standard does not run afoul of clearly established federal law. *Id*.

Here, the MAC found that it was "not manifestly unreasonable for counsel to have decided that many of the redacted denials would do more harm than good to the defense." *Cooper*, 2018 WL 6626305, *2. As the MAC pointed out, the "[a]dmission of an accusation carries with it a risk of prejudice to the defendant 'because a detailed accusation improperly puts in evidence the Commonwealth's version of the facts.'" *Id*., *quoting Commonwealth v. Barbosa*, 457 Mass. 773, 799, 933 N.E.3d 93, 116 (2010). Thus, counsel was not constitutionally ineffective for deciding not to present the denials that were preceded by "accusatory questions," which were necessary for context, but could have been prejudicial against the petitioner. *Id*. The MAC's conclusion was reasonable.

The petitioner argues here that the "allegedly accusatory questions noted by the Appeals Court would have caused no prejudice" because they were cumulative of other questions heard by

the jury, and he then cites just two examples.[10] P. Memo 41. But, his original ineffectiveness claim and the MAC's analysis were based on a total of forty-five denials that were excluded, not just these two. Thus, in addition to including these forty-five denials, the jury also would have heard forty-five different accusations. While a couple of additional interactions demonstrating the petitioner's denials may have been helpful, having the jury hear close to forty-five different damning and accusatory questions from the detective could veer into the realm of being prejudicial. Each accusation and denial in isolation may not have been damaging, but all of them could have given the jury a more complete and detailed narrative from the police's perspective, which likely would have detracted from the defense trial counsel was trying to present. This was in trial counsel's mind during the trial, as he explained in his affidavit:

> the officer's questions that produced the denials were more damaging than the denials were helpful. . . . As with the rest of the video, the denials are relevant but the focus would be on the statements of the officers. Much of those were incorrect or embellished, but in my view damaging nonetheless. It you admit the denial you have to admit what gave the impetus to the denial or else it doesn't make sense.

S.A.179. Trial counsel was faced with a choice about the denials that appeared in the transcript and made a reasonable, tactical decision to not admit these portions of the video interview. His final decision was made on the third day of trial after the testimony of several witnesses, including the victim, the victim's sister, the petitioner's wife, a social worker from Department of Children

---

[10] The two questions the petitioner refers to are:

(1) "Did you ever expose yourself to her at all?," to which he answered, "no, well--" and then went on to say, "I mean RC would come in when I'm having—I'm going to the toilet" and that his "standing there, peeing, it was a fascination for her . . . ." S.A.1089-190. The petitioner then explained that she would come in the shower with him and he would send her out. S.A.190. He was then asked:

(2) "Did - - honestly, did you put your hands on her at all?," to which his response was, "no, just to get her out of . . . to move her out of the shower." S.A.191.

There were a few additional questions and denials that were admitted at trial that appear at S.A.192; 195-196; 198; 207. In similar regard to the petitioner's argument, because there were some denials that were admitted in the video at trial and , the additional denials could be viewed as merely cumulative.

and Families, a nurse employed by the Massachusetts Sexual Assault Nurse Examiner program, and the detective. As he stated in his affidavit, he "concentrated his fight" on having the entire video excluded on grounds that it was coercive, gave a false impression about his client, that the police twisted his client's words and "caused him to make statements against his interest" and the entire video was "replete with hearsay, prejudicial and unfair." S.A.178-179. Indeed, trial counsel filed a motion in limine to prevent the video from being played and objected again at trial to the redacted version of the video. Counsel was aware of the challenges with this transcript, having reviewed it multiple times by himself and with the petitioner and his investigator before trial. S.A.178. He had to weigh the potential benefit of admitting the additional denials with the inherently dangerous accusations that surrounded them. S.A.179. Ultimately, he made the decision that "putting the denials in would not have helped" the petitioner because they were "preceded by and followed by damaging statements of the police." S.A.179. This was a reasonable tactical decision made by counsel after the court denied his requests to exclude the video. And although trial counsel said in retrospect that he "cannot say that [his] decision on this was the best," it also cannot be said that his decision to avoid the potential danger and prejudice of the accusatory questions by police was manifestly unreasonable at the time of trial. As stated, the jury did hear some denials by the petitioner and based on the guilty verdicts, it appears the jury did not believe them over the other evidence against the petitioner. The petitioner provides no substantive reason that having the jury hear more denials (along with more accusations) would have tipped the scale in his favor for a not guilty verdict. This is case where, with hindsight, it appears that there may have been different strategies available, but that does not make counsel's decision to exclude the additional denials "manifestly unreasonable" when it was made. That the petitioner now disagrees with this strategic decision made during the trial does not make it constitutionally ineffective.

Moreover, the petitioner has not shown that the MAC's finding that counsel's performance was not deficient was an unreasonable application of the *Strickland* standard.

Despite finding trial counsel's performance was not deficient, the MAC did engage in a very limited analysis of the prejudice prong for ineffective assistance.[11] As part of its decision, the MAC reviewed the entire transcript and "identified only four denials that likely could have been admitted without also having to admit a preceding question that was accusatory (or at least susceptible of being viewed as such)." *Cooper*, 2018 WL 6626305, *2. Of those four, the MAC determined that one, "when viewed in context, did not constitute a substantial ground of defense, nor was it manifestly unreasonable for counsel not to have introduced it." *Id*. The MAC then addressed these three remaining denials that could have been admitted at trial: (1) "I would never have intercourse with [the victim]"; (2) "I told her [the petitioner's wife] I never had intercourse with [the victim]"; and (3) "I have never had sex with her because [inaudible] wear a condom." *Id*. For purposes of its analysis, the MAC assumed it was manifestly unreasonable for counsel not to have offered these statements, but then concluded that the petitioner "ha[d] not shown, on this record, that counsel's failure deprived him of an available, substantial ground of defense." *Id*.[12] The MAC made this decision acknowledging that it did not have the unredacted video. *Id*.[13] After

---

[11] Having found trial counsel's performance was not deficient, the MAC did not need to address the prejudice prong. *See Strickland*, 466 U.S. at 687; *see also Knight*, 447 F.3d at 15 (noting that the failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong). The same applies here in that this Court "need not address both requirements if the evidence as to either is lacking." *Sleeper*, 510 F.3d at 39.

[12] The MAC also stated that it disagreed with the motion judge's decision that the statements were cumulative of the portions of the video shown to the jury. *Cooper*, 2018 WL 6626305, *2. As will be seen, even if the denials admitted were not cumulative, the fact remains that the jury did hear several denials by the petitioner during his interview.

[13] The MAC explained:

> we cannot determine the impact that [these denials] would have had without seeing the unredacted video, which is not in the record. Without the unredacted video, we have no means of assessing the tone and tenor of the statements or what impression they might have had on the jury in the context

18

the panel received the full, unredacted video as part of the petitioner's petition for rehearing, and after further review, it denied the petition for rehearing. S.A.14. Thus, even after reviewing the unredacted video, the MAC still rejected the petitioner's claim that counsel was ineffective. *Id*. The MAC's conclusion was a reasonable application of *Strickland*.

As part of his argument asserting prejudice, the petitioner states that "the judge informed the jury that [trial counsel] could have entered into evidence any other part of the video he wished." P. Memo 46, *citing* Tr. IV-111. He then claims, based purely on speculation, that counsel's failure to enter anything "permitted the jury believe nothing positive for [the petitioner] remained, but it also allowed the jury to interpret that as a negative for [the petitioner." *Id*. It does no such thing. The judge's statement requires some context.

Trial counsel was cross-examining the detective after the video had been played (S.A.1150) and was asking questions about his techniques for interviewing suspects. S.A.1151. Trial counsel asked the detective whether he would "push, push, push, push" to get the answers, and the detective answered in the negative. *Id*. Counsel also asked whether "you make statements over and over and over again?" and again, the detective said no, adding that he just tries "to elicit the facts that took place during an event." *Id*. Trial counsel then asked, "I just wanted to make clear that -- [ ] -- there's a lot that's not on this video, correct?" *Id*. The prosecutor then made an objection, which the trial judge sustained. S.A.1152. Trial counsel then asked the judge whether he "can say this is a redacted version of the - - " and the judge interrupted and said "the jury's already been informed of that . . ." and "if you wish any more to be played, you may have it played." S.A.1152. Trial

---

of the interview as a whole. Thus, on this record, the [petitioner] failed to demonstrate prejudice. We do not preclude the possibility that a judge could reach a different conclusion should the [petitioner] present the unredacted video in conjunction with a new motion for a new trial.

*Cooper*, 2018 WL 6626305, *2.

counsel then returned to questioning the detective about his interview techniques and did not admit additional parts of the video. It appears that trial counsel had a strategy to make it appear to the jury that the excerpts that were missing may have included this type of questioning by the detective. It may have turned out to be an unsuccessful strategy, but it was not unreasonable.

But also, prior to playing the video, the judge informed the jury it was "redacted in order to have it contain only those matters that are potentially material to [their] consideration. . ." S.A.1145. And, in his closing argument, defense counsel reminded the jury that during their deliberations they would have the video and would see "portions of the questioning. It's redacted, meaning they cut out some portions and left in portions that they say are statements of Bruce Cooper. It's not the entire interview. It's statements they left in." S.A.1350. He also argued that if the petitioner "were somebody that wanted to hide anything, he wouldn't have made any statements, but he did." S.A.1350. He further pointed out to the jury that "you can see that he's very uncomfortable talking about this, but he is talking about it. . . . They're going to say oh, he admitted. . .  No. He admitted to wanting to have an affectionate relationship with his daughter. He didn't admit to abusing his daughter. He didn't admit to having sex with his daughter. You're never going to see any admission because it's not there." S.A.1350-1351. Although this was in closing, it demonstrates that trial counsel made a reasonable effort to the put the interview video in the best light for the petitioner and that the jury should not infer that the portions left out were negative or prejudicial. Moreover, the judge's statement, when reviewed in context with these other aspects of the trial, was not prejudicial such that counsel should or could be found constitutionally ineffective. That counsel opted to not include what he thought were damaging, accusatory statements as well as the denials from the video, even after the judge made this statement, does not support a finding of ineffectiveness.

It is only based on speculation that the petitioner can assert that the "combination of the judge's comment and counsel's failure to enter the denials, very likely led the jury to conclude that when asked about the charges and the admission during the interview, [the petitioner] did not deny anything." P. Memo 46. But, the jury did see him deny some conduct. And, as stated above, the MAC determined that four of the denials that were not included in the video might have been helpful, but their exclusion was not prejudicial to the petitioner and the remaining denials that were excluded were buried within prejudicial and dangerous accusations made by the detective. Moreover, given that the jury did hear several denials from the petitioner that he did not touch the victim or do anything else inappropriate, it is not reasonable to assume that the jury believed "that the detective would have confronted [the petitioner] about the charges and alleged admission during the interview", as is asserted by the petitioner. P. Memo 46. *See* S.A.189; 190; 191;92; 195-196; 197; 198; 200; 207; 217. Also, it does not seem likely that the jury would have inferred that the missing excerpts included a confession where the jury heard him say such things as the victim was sexually curious and whenever she approached him, he pushed or moved her away from him. S.A.188-192;195-196; 198; 115; 207-208; 217. In the redacted interview, the petitioner also told the detective that the victim had been sexually abused by her maternal grandfather and that might have affected her behavior towards him. S.A.211-212. The jury also heard him say that he attempted to tell his wife about the victim's alleged inappropriately sexualized behavior. S.A.198; 200; 212-213; 217-218. So, although some additional denials were not played for the jury, there were enough examples for the jury to have found that he denied any sexual assault of the victim during the interview. But, at trial, with all of the other evidence, the jury chose not to accept his defense and the petitioner offers not legal authority or persuasive reason that would have required the MAC to conclude that the hypothetical piling on of denial upon denial from the petitioner, that

the jury apparently deemed incredible, created a reasonable probability of a different outcome. This does not amount to prejudice based on ineffective assistance of counsel.

Although he may disagree with the MAC's decision, the court was not unreasonable in concluding that the trial counsel's performance was not deficient and the exclusion of his statements of denial did not deprive him of an available, substantial defense or change the outcome of his trial. The petitioner has not met his burden to show that trial counsel was constitutionally ineffective. In addition, the petitioner has not demonstrated that the MAC unreasonably applied the *Strickland* standard.

## **CONCLUSION**

This petition for writ of habeas corpus should be dismissed because the MAC's decision regarding the petitioner's claim of ineffective assistance of counsel was not an unreasonable application of the clearly established *Strickland* standard.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

/s/ *Jennifer K. Zalnasky*

Jennifer K. Zalnasky (BBO # 650762)
Assistant Attorney General
Appeals Division
Criminal Bureau
1441 Main Street, Suite 1200
Springfield, Massachusetts 01103
413-523-7746
413-784-1244
jennifer.zalnasky@state.ma.us

Dated:  November 13, 2020

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system on November 13, 2020, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  There are no non-registered participants involved in this case.

/s/ *Jennifer K. Zalnasky*