UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRUCE COOPER, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 20-cv-40084-ADB |
| | * | |
| MATTHEW DIVRIS, | * | |
| | * | |
| Respondent. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On July 2, 2020, Bruce Cooper ("Cooper") filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his 2012 conviction on two counts of aggravated

statutory rape, one count of statutory rape on a child under the age of fourteen, and one count of

indecent assault and battery on a child under the age of fourteen, following a jury trial in the

Bristol County Superior Court.  [ECF No. 1].  For the reasons set forth below, Cooper's petition

for a writ of habeas corpus, [ECF No. 1], is DENIED.

I.      **BACKGROUND**

Both the Bristol County Superior Court, in evaluating Cooper's motion for a new trial,

and the Massachusetts Appeals Court ("MAC"), in evaluating Cooper's appeal of the trial court's

denial of his motion for a new trial, provided accounts of the facts related to Cooper's

indictments and trial, which are set forth in relevant part below.  See [ECF Nos. 1-3, 1-4].[1]

_____

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court, a determination of a factual issue made by a State court
shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  This presumption applies with equal

On July 31, 2009, the victim, "RC," told her mother, "Alison," that her stepfather, Cooper, had been sexually assaulting her on a regular basis for several years. Cooper was arrested and charged with sexually abusing RC on August 6, 2009. Immediately following his arrest, Cooper participated in a recorded interview with North Attleboro Police Detective Dan Arrighi ("Det. Arrighi"). During the interview, Cooper repeatedly denied RC's allegations. Cooper also told Det. Arrighi about a number of incidents during which he rejected RC's alleged attempts to engage in sexual behavior with him. At one point, Det. Arrighi told Cooper that Alison reported to police that he had told her he had worn a condom when he had intercourse with RC. Cooper responded that he had not worn a condom his "whole entire life" and explained that due to high blood pressure he "cannot even achieve an erection most times."

Between July 31, 2009 and December 2009, RC recanted and modified her allegations against Cooper several times. Reports from the Department of Children and Families ("DCF"), which were later turned over to Cooper's trial counsel, Attorney John Connors ("Attorney Connors"), reflected these changes to RC's allegations. The reports also indicated that RC had been seeing two therapists, one of whom was Mary Ann Silvestri ("Silvestri"), while the charges against Cooper were pending. One of the DCF reports noted that RC told Silvestri she and Cooper never had sexual intercourse.

[ECF No. 1-4 at 1–2].

Prior to trial, defense counsel filed a motion in limine to exclude a recorded police interview of the defendant. The trial judge denied the motion, ruling that the Commonwealth could present a redacted version of the video to the jury.

[ECF No. 1-3 at 1–2].

Cooper's trial began on July 10, 2012. At trial, RC testified that Cooper began sexually abusing her in 2004, by laying on top of her clothed and humping her. RC stated that the abuse did not progress to the point of penile penetration until 2007, and that in addition to penile penetration, Cooper digitally penetrated and performed cunnilingus on her. RC testified that Cooper never wore a condom during intercourse and also that she never observed him struggle to achieve an erection.

On the third day of trial, the prosecutor provided the judge and Attorney Connors a redacted version of [the video], which Attorney Connors[] [again] moved to exclude. The judge allowed the redacted . . . [v]ideo to come into evidence, but declared that Attorney Connors could play any part of the . . . [v]ideo

---

force to findings of fact by both state trial and appellate courts. Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

he wished in order to establish context. Ultimately, Attorney Connors did not play any of the redacted portions of the . . . [v]ideo for the jury.

[ECF No. 1-4 at 2].

The version of the . . . [v]ideo presented to the jury included footage of Cooper denying RC's accusations at least ten times and Cooper's accounts of numerous occasions on which he purportedly rejected RC's attempts to engage in sexually inappropriate behavior with him.

[Id. at 5].

The jury returned guilty verdicts on all but one charge brought against Cooper. [ECF No. 11-2 ("S.A. Ex. I") at 7–8]. He was then sentenced to concurrent 10 to 15 year prison terms on the aggravated statutory rape charges, and concurrent 10 years of probation on the other two charges. [Id. at 8]. Cooper timely appealed to the MAC. [Id. at 8–9]. The MAC stayed the appeal so that Cooper could file a motion for a new trial, which Cooper subsequently filed. [Id. at 9].

In his motion for a new trial, the defendant argued [in part] that trial counsel provided ineffective assistance by failing to designate the "[t]hirty-one times during his interview . . . [that he] denied having intercourse with or inappropriately touching [the victim]" and the "fourteen separate times that [he] denied that he had previously admitted to his wife that he engaged in inappropriate behavior with [the victim]."[2] The motion was accompanied by an affidavit from trial counsel, in

---

[2] Cooper describes the omitted statements as follows:

- Responding "Nothing" to the detective asking, "[W]hat's been going on between you and her?"
- Responding "Nothing" when asked, "What else has taken place with her?"
- Twice denying that he thrust[] his pelvis in a humping motion with RC.
- Denying that RC had ever been on top of him while she was topless.
- Denying, five consecutive times, [that he had] intercourse with RC.
- Three times denying placing his mouth on RC's breast.
- Denying consensual sexual acts with RC.
- Denying three times [that he] ever put[] his hands on RC's breasts.
- Twice denying ever putting his hand over the clothes [covering] RC's privates.
- Twice denying ever having told his wife that he touched RC's breasts.
- Saying, "I have never been inappropriate with my stepdaughter."
- Denying fondling RC.

which [trial counsel] stated that he "made the decision that putting the denials in would not have helped the defendant as the denials were preceded by and followed by damaging statements of the police which gave the denials context." A judge, who was not the trial judge, denied the motion on the ground that the redacted denials did not constitute a substantial ground of defense because they were "cumulative of other denials that <u>were</u> presented to the jury."

[ECF No. 1-3 at 2].

Cooper appealed the denial of his motion for a new trial, which a three-justice panel of the MAC considered along with his previously stayed direct appeal. [S.A. Ex. I at 11]. On December 19, 2018, the MAC affirmed the trial court's denial of Cooper's motion for a new trial ("December 19, 2018 Decision"). [ECF No. 1-3 at 8]. The MAC also vacated two of Cooper's convictions as duplicative and affirmed the others. [Id.]. Cooper filed a petition for rehearing

---

- Asserting [that], "I would never have intercourse with my daughter."
- Denying that he was not living at home because he had touched RC.
- Responding, "Nothing at all" when asked, "And you never touched her or nothing?"
- Denying the assertion that he had admitted everything to his wife.
- Twice refuting his wife's alleged claim that he told her not to worry because he wore a condom.
- Saying, "No. Never. Never" when asked if he ever told his wife that he had intercourse with RC.
- Asserting, "I have never had sex with her."
- Stating that he never told his wife [that] he wore a condom, to which the detective replied, "[I]t's on tape, and your wife conveyed that to us."
- Denying that he knew why RC would make these claims.

[ECF No. 2 at 34–35].

Additionally, all but the last sentence of the exchange below was omitted:

Det. Arrighi: [Y]ou conveyed to your wife — that you had sexual intercourse with [RC], but not to worry, because you were wearing a condom.

Mr. Cooper: I have never worn a condom. I have never worn a condom in my life. I have – I have medical not medical, but I have high blood pressure, that's what they tell me, and I cannot even achieve an erection most times.

[ECF No. 2 at 35].

requesting that the MAC reconsider its decision on his motion for a new trial.  [S.A. Ex. I at 362–65].  In that petition, Cooper argued that the Court had not reviewed the full unredacted video, which was not in the record.  [Id.].  Subsequently, the MAC entered the following order: "After receipt of the full, unredacted video and after further review, the petition for rehearing is denied by a majority of the panel (Sacks & Shin, JJ.) ("Order on Rehearing").  Justice Rubin would allow the petition."  [Id. at 14].  Finally, prior to filing his motion for rehearing, Cooper filed an application for leave to obtain further appellate review ("ALOFAR") with the Supreme Judicial Court ("SJC").  [Id. at 14].  The SJC summarily denied the request after the MAC issued its Order on Rehearing.  Commonwealth v. Cooper, 123 N.E.3d 187 (Mass. 2019).

## II.      LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  See 28 U.S.C. § 2254.

The AEDPA permits federal courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court's decision on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision is an unreasonable application of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts.  Id. at 413.  An

unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (internal quotation marks and citation omitted).

Lastly, the Court "must accept the state court findings of fact unless convinced by clear and convincing evidence that they are in error." Linton v. Saba, 812 F.3d 112, 116 (1st Cir. 2016) (internal citation and internal punctuation omitted). "A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). These factual findings include "'basic, primary, or historical facts,' such as witness credibility and recitals of external events." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (quoting Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001)).

"[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). Thus, in sum, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

***

Cooper argues that he is entitled to habeas relief as his trial counsel was constitutionally ineffective because he did not present redacted portions of the video to the jury. [ECF No. 1 at 6]. "Since an ineffective assistance of counsel claim is a mixed question of law and fact, [Cooper] cannot be granted relief unless the MAC's decision was an 'unreasonable application of[ ] clearly established Federal law.'" Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007) (alteration

6

in original) (first citing <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984); then citing <u>Scarpa</u>

<u>v. DuBois</u>, 38 F.3d 1, 9 (1st Cir. 1994); and then quoting <u>Williams</u>, 529 U.S. at 409).

> The clearly established federal law governing ineffective assistance of counsel claims is the framework established in <u>Strickland</u>. <u>Williams</u>, 529 U.S. at 390–91. On direct review under <u>Strickland</u>, a criminal defendant must show that his attorney's performance was deficient and that he was prejudiced—deprived of a fair trial—as a result. <u>Strickland</u>, 466 U.S. at 687. Massachusetts applies a "functional equivalent" to the <u>Strickland</u> deficiency standard, <u>Lynch v. Ficco</u>, 438 F.3d 35, 48 (1st Cir. 2006), which requires a "serious failure by trial counsel," <u>Commonwealth v. Harbin</u>, 760 N.E.2d 1216, 1219 (Mass. 2002), meaning a "serious incompetency, inefficiency, or inattention" that "has likely deprived the defendant of an otherwise available, substantial ground of defence," <u>Saferian</u>, 315 N.E.2d at 883. Reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and represents sound trial strategy. <u>Strickland</u>, 466 U.S. at 689.

<u>Jewett v. Brady</u>, 634 F.3d 67, 75 (1st Cir. 2011).

Further, as to the "performance" prong of the <u>Strickland</u> test, "where tactical or strategic

decisions of defendant's counsel are at issue, [Massachusetts courts] conduct [their] review with

some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful.

. . . Rather than merely unreasonable, [Massachusetts law] require[s] that challenged tactical

judgments [ ] be 'manifestly unreasonable.'" <u>Commonwealth v. White</u>, 565 N.E.2d 1185, 1189–

90 (Mass. 1991) (quoting <u>Commonwealth v. Adams</u>, 375 N.E.2d 681, 686 (Mass. 1978)) (other

citations omitted). The First Circuit has held this test is also consistent with <u>Strickland</u>. <u>See</u>

<u>Castillo v. Matesanz</u>, 348 F.3d 1, 13 (1st Cir. 2003) ("Th[e] 'manifestly unreasonable' standard

is not contrary to the standard set forth in <u>Strickland</u>.").

Where a state court has considered a petitioner's claim on the merits under "<u>Strickland</u>

principles," a "'doubly' deferential standard [] applies." <u>Jewett</u>, 634 F.3d at 75 (citing

<u>Harrington</u>, 562 U.S. at 789). "[T]he 'pivotal question'" in this context is not "'whether defense

counsel's performance fell below <u>Strickland</u>'s standard,' but 'whether the state court's

application of the <u>Strickland</u> standard was unreasonable.'" <u>Id.</u> at 75 (citing <u>Harrington</u>, 562 U.S.

at 785); see also Harrington, 562 U.S. at 788 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.").  Additionally, "the Strickland standard is a very general one, so that state courts have considerable leeway in applying it to individual cases."  Jewett, 634 F.3d at 75 (citing Harrington, 562 U.S. at 785–86).

III.    DISCUSSION

Because the SJC denied Cooper's ALOFAR, the Court "look[s] through" to "the last reasoned decision," Malone v. Clarke, 536 F.3d 54, 63 n.6 (1st Cir. 2008) (quoting Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002)), that is, the MAC's December 19, 2018 Decision and Order on Rehearing.  Cooper asserts that he is entitled to habeas relief because the MAC's application of the Strickland principles was objectively unreasonable.

A.    Trial Counsel's Decision Not to Play 42 of the 45 the Redacted Statements

As to all but three of the redacted portions of the video, the MAC determined it was not "manifestly unreasonable" that trial counsel did not play them.  [ECF No. 1-3].

First, the MAC found that because 41 of the 45 redacted portions were "denials that were preceded by accusatory questions, where the questions were necessary to give the denials context," [ECF No. 1-3 at 3], presenting them to the jury would have required "[a]dmission of an accusation [which in turn] carries with it a risk of prejudice to the defendant 'because a detailed accusation improperly puts in evidence the Commonwealth's version of the facts.'"  [Id. (quoting Commonwealth v. Barbosa, 933 N.E.2d 93, 116 (Mass. 2010))].  As such, the MAC concluded it was not "manifestly unreasonable" for trial counsel to decide that these denials "would do more harm than good."  [Id.].

This Court finds that it was not unreasonable for the MAC to conclude that the admission of these accusatory questions could prejudice Cooper, whether or not the jury had heard similar

questions or accusations, and as such, that it was not manifestly unreasonable for trial counsel to have elected not to have them played.  It is possible, as Cooper asserts, [ECF No. 2 at 41], that if the jurors had been shown more of Cooper's denials, they may have viewed the video differently or drawn less damaging inferences.  On the other hand, showing the jurors more of the accusatory questions that accompanied the denials could have caused them to draw more damaging inferences, that outweighed any potential benefit to playing the denials that followed. The fact that Cooper was ultimately convicted does not mean that his trial counsel made a mistake.  "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).  The Court will not disturb the MAC's reasonable evaluation of the potential risks of admitting these statements.[3]

As to the forty-second statement, the MAC next determined that the statement "I have never been inappropriate with [the victim]," if played, would not have made a meaningful difference to Cooper's defense.  [ECF No. 1-3 at 4].  It additionally pointed out that "in the portions of the video the jury saw, the defendant acknowledged that 'there were inappropriate things happening' and described how the victim would on numerous occasions get into bed and

---

[3] Cooper additionally asserts that trial counsel could have elicited the same information from the detective on cross examination.  [ECF No. 2 at 42].  Although he raised this alternative theory below, it was not directly addressed by the MAC.  There may have been many reasons trial counsel did not elicit this testimony from the detective.  The Commonwealth's examination and trial counsel's cross examination of the detective were both very brief, [ECF No. 13 ("S.A. Exs. II–VI") at 1139–60], and neither really addressed the substance of the interview.  Trial counsel may have decided that allowing the detective to testify about the substance of the interview would be too risky, because, for example, his testimony could undercut Cooper's denials of other specific allegations in the video.  This is precisely the type of tactical decision-making by trial counsel to which courts give great deference, and the Court does not find that this decision was manifestly unreasonable.

into the shower with him, try to touch his genitals, and watch him urinate," thereby directly contradicting the omitted statement.  [Id. at 4 n.2].  Cooper asserts that this reasoning was "unsound" because the "admission that the alleged victim acted inappropriately is not the same as an admission that Mr. Copper acted inappropriately."  [ECF No. 2 at 43].  While logically there may be a difference between Cooper acting inappropriately towards RC and Cooper being in inappropriate situations with RC, this distinction may not have resonated with the jury given that he was repeatedly in those "inappropriate" situations over many years.  Finally, the portions of the video that the jury did see included numerous instances in which Cooper explained that he "rejected [RC's] attempts to engage in sexually inappropriate behavior with him."  [ECF No. 1-4 at 5].  The Court thus finds that it was not unreasonable for the MAC to conclude that this omitted statement would not have meaningfully aided Cooper's defense, and as such trial counsel's decision not to play it was not manifestly unreasonable.

     **B.**    **Remaining Three Redacted Statements**

This leaves three remaining redacted statements: (1) "I would never have intercourse with [the victim]"; (2) "I told her [the defendant's wife] I have never had intercourse with [the victim]"; and (3) "I have never had sex with her because [inaudible] wear a condom."  [ECF 1-3 at 4].  The MAC disagreed with the trial court's assessment that these statements were cumulative of the parts of the video seen by the jury because the "jury heard the defendant say that the victim engaged in sexually inappropriate behavior with him and that he rejected her advances on those occasions," but "did not hear the defendant deny having intercourse with the victim."  [Id. at 5 n.4].  The MAC also noted that trial counsel had acknowledged in his affidavit that "[i]t may have been helpful to include some of the denials."  [Id. at 5].[4]  That said, the MAC

_____

[4] The MAC noted that the Commonwealth had not argued that these statements were "inadmissible because they were post-<u>Miranda</u> denials of guilt," and, on that basis, did not

did not determine, one way or the other, whether the decision not to play these statements was manifestly unreasonable.

Instead, the MAC bypassed this evaluation and moved on to the prejudice prong.  [ECF No. 1-3 at 5].  The MAC held that even assuming that the decision was manifestly unreasonable, Cooper failed to make the necessary showing that he was prejudiced by it or, in other words, he failed to show that the decision not to play these three statements "deprived him of an available, substantial ground of defense."  [Id.].  The MAC specifically noted that because the unredacted video was not in the record, it could not "assess[] the tone and tenor of the statements or what impression they might have had on the jury in the context of the interview as a whole," and that "a judge could reach a different conclusion should the defendant present the unredacted video in conjunction with a new motion for a new trial."  [Id.].  Nevertheless, in its Order on Rehearing, the MAC stated that after receiving the unredacted video and engaging in further review, a majority of the panel declined to reconsider its previous decision.  [S.A. Ex. I at 14].  Although the MAC did not include specific reasons, this decision is entitled to the same deference as the December 19, 2018 Decision.[5]

Cooper does not raise specific arguments addressing the unreasonableness of not playing these three statements for the jury.  On the issue of prejudice, Cooper addresses all 45 statements

---

address the issue.  [ECF No. 1-3 at 4 n.4 (citing Commonwealth v. Nawn, 474 N.E.2d 545, 548–49 (Mass. 1985)].  This issue has also not been raised in this proceeding and thus the Court does not address it.

[5] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington, 562 U.S. at 99.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Id. at 98.

in the aggregate, rather than focusing specifically on these three.  [ECF No. 2 at 45–46].  He argues that trial counsel's decision not to present all of the statements was prejudicial, because it "permitted the jury to believe nothing positive for Mr. Cooper remained [in the video], but it also allowed the jury to interpret that as a negative for Mr. Cooper."  [Id. at 46].  Cooper specifically asserts that because of trial counsel's decision not to play the redacted sections of the video, it is "very likely" that the "jury conclude[d]" that he was asked during the interview about the charges against him and his alleged admission of wrongdoing to his wife, and he "did not deny anything."  [Id.].

Appropriately focusing just on these three statements: the Court finds the MAC could have reasonably concluded that Cooper had failed to show that he was prejudiced, or deprived of an available, substantial ground of defense, by trial counsel's decision not to play the excerpts. See Weaver v. Massachusetts, 582 U.S. 286, 300 (2017) ("In the ordinary Strickland case, prejudice means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' . . . [T]he prejudice inquiry is not meant to be applied in a 'mechanical' fashion. . . . [T]he ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.'" (quoting Strickland, 466 U.S. at 694, 696)).  While these denials could have been helpful to his defense, it seems unlikely that presenting them would have had a substantial impact on the outcome of the trial, particularly since the jury heard Cooper deny other specific allegations.

Additionally, the Court does not find it likely that this decision led the jury to conclude that the redacted sections of the video depicted Cooper *not* denying specific allegations made against him.  Cooper argues that this negative inference was made more likely because the judge told the jury that trial counsel could have, but chose not to enter into evidence the redacted

portions of the video.  [ECF No. 2 at 45–46].  Although the judge did make this comment, he also told the jury the video was "redacted in order to have it contain only those matters that are potentially material to [their] consideration." [ECF No. 16 at 20 (quoting S.A. Exs. II–VI at 1145)].  Additionally, given that it was the Commonwealth that presented the video to the jury and chose which portions of the video to play, a point stressed by trial counsel in closing, it seems unlikely that the jury would have assumed that the Commonwealth had omitted excerpts that were helpful to their case, rather than exculpatory.  Likewise, on cross-examination of the detective in the video, Cooper's trial counsel focused on the detective's style of asking questions, to "push, push, push" and to "make statements over and over and over again," seemingly to suggest to the jury that the omitted portions of the video were merely repetitive.  [Id. at 18–19].  While it is possible that the jury could have reached an unfavorable conclusion about what was in the redacted portions of the video, it seems unlikely, and it was reasonable for the MAC to conclude that not playing these three statements did not fundamentally impact the fairness of the proceedings.

In sum, the Court finds that the MAC's determination that trial counsel's performance was not constitutionally deficient was reasonable.  Cooper's claim for ineffective assistance of counsel therefore fails.

## IV.        CONCLUSION

Accordingly, the petition for a writ of habeas corpus, [ECF No. 1], is <u>DENIED</u>.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rules Governing Section 2254 Cases, R. 11(a).  Here the Court will issue a certificate of appealability.

**SO ORDERED.**

June 27, 2023                                   /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                U.S. DISTRICT JUDGE